SAMPSON (FOSTER v.). See Case No. 4,982.

SAMPSON, The (WINSOR v.). See Case No. 17,888.

## Case No. 12,282.

### The SAM SLICK.

[2 Curt. 480.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1855. [2]

MARITIME LIENS—UNDER STATE STATUTE—STRICT CONSTRUCTION.

1. Where a local law, conferring a lien. declared: "And in all cases such lien shall cease, immediately after such vessel shall have arrived in any port out of this commonwealth," it was held that the lien was lost when the vessel bound from Newburyport to Boston put into Portsmouth on account of a fog, and to get provisions.

[Cited in The Richard Busteed, Case No. 11,764.]

2. Privileged liens are stricti juris, and are not to be extended argumentatively to cases not within the law which confers them.

[Cited in De Moss v. Newton, 31 Ind. 222; Levy v. Newman, 130 N. Y. 14, 28 N. E. 660.]

---

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

[2] [Reversing Case No. 12,283.]

3. Though the court may think the legislature would have excepted a case out of a statute of limitations, if it had been foreseen, the court cannot except it.

[Cited in Morgan v. Des Moines, 54 Fed. 460.]

[Appeal from the district court of the United States for the district of Massachusetts.]

This was an appeal from a decree of the district court, pronouncing for a lien on a domestic vessel, for the price of materials used in its construction, under a statute of the state of Massachusetts. St. 1848, c. 290. [Case No. 12,283.] The parties have agreed on a statement of facts, the substance of which is as follows: "The respective libellants, at the dates mentioned in the schedules annexed to their libels, supplied the materials therein mentioned, (or a portion of the same, to be determined thereafter in case the court should decide that the libellants can recover any thing,) at the prices therein specified; and the said materials were used in the construction of the said bark Sam Slick, at the port of Newburyport, in the state of Massachusetts, the said bark being a ship or vessel within the commonwealth of Massachusetts. The said materials were furnished by the libellants to said Manson & Fernald, and charged to them on their books, the libellants knowing that they were to go into this vessel, and supposing that they had a lien on it for them, and were suitable and necessary and proper for the purpose of building the same, and were delivered to Manson & Fernald, the carpenters who built the said bark, and a debt was contracted therefor which still remains unpaid, except for the part stated in the said libels, although demanded by the libellants of the said Manson & Fernald. The said bark was built at Newburyport under and by virtue of the contract set forth in, and annexed to, the answer in these cases; and the said David E. Mayo paid the said Manson & Fernald for furnishing the materials. as set forth in said answers, and building the said bark, but the libellants did not know at the time of furnishing the said materials, that there was such a contract. The said vessel was completed on or about May 19. 1854. and on the 20th of said May. the said bark first sailed from the port of Newburyport for the port of Boston in said district, it being the intention of the master to proceed directly to Boston; but soon after leaving the harbor of Newburyport, and on the same day. in consequence of head winds, an approaching dense fog, and being short of provisions, the said bark was obliged to put back for a harbor and provisions, and the port of Newburyport not being a port of easy access for so large a vessel, the harbor of Portsmouth, in the state of New Hampshire, was deemed the most suitable port to go into, and the said vessel the same day put into and anchored in the harbor of Portsmouth. And on the next day. and after taking on board a sufficient supply of provisions, the said bark sailed for the port of Boston, where she arrived on the following day, and there remained until she was libelled in these suits. The said contract, payments, and schedules may be referred to, but are to be taken as true no further than their statements are particularly admitted herein. If upon the foregoing statement of facts, the court is of opinion that the libellants are entitled to recover, a decree shall be entered for them for an amount to be agreed upon by the parties, or determined by the court, with costs, otherwise a decree for the claimant for costs. Nothing herein contained shall be deemed a waiver of the right of either party to an appeal to the circuit court of the United States, should he feel aggrieved by the decision of the district court."

Mr. Andros, for complainant.

P. W. Chandler, contra.

CURTIS, Circuit Justice. The question is, whether the lien given by the local law was terminated by going into the harbor of Portsmouth, New Hampshire, remaining there over one night and part of two days, and taking on board some needed provisions. The second section of the act in question is as follows: "When the ship or vessel shall depart from the port at which she was when such debt was contracted, to some other port within this commonwealth, every such debt shall cease to be a lien at the expiration of twenty days, after the day of such departure; and in all cases such lien shall cease, immediately after such vessel shall have arrived in any port out of this commonwealth." This case is within the words of the last clause of this section. The vessel went into a port out of the commonwealth, to procure provisions; and this was an arrival in that port within the usual meaning of the word arrival. Mr. Chief Justice Marshall in the case of The Patriot [Thomson v. U. S., Case No. 13,985], interpreting the meaning of this word used in one of the non-intercourse acts, says: "To arrive, is a neuter verb, which, when applied to an object moving from place to place, designates the fact of coming to or reaching a place. If the place be designated, then the object which reaches that place, has arrived at it. A person coming to Richmond, has arrived when he enters the city. But it is not necessary to the correctness of this term. that the place at which the traveller arrives should be his ultimate destination or the end of his journey." So here, the vessel having gone into the port of Portsmouth, arrived there, though she was bound to Boston. But it is argued that the case is within the first clause of the act, because the vessel departed from the place where she was when the debt was contracted, to some other port, namely Boston, and so the lien was not terminated till the expiration of twenty days after such departure.

It is true the case is within the first clause;

but if it is also within the second clause, that must operate on it; and it may be within both. The second clause does not except cases because they are within the first clause. On the contrary, it says expressly that in "all cases such lien shall cease immediately after the vessel shall have arrived in any port out of the commonwealth." Certainly all cases of such arrival must include cases, where the vessel departed from the place where she was when the debt was contracted, and came to another port in the state, after visiting and arriving at a port out of the state.

It is further argued, that the occasion for going to Portsmouth and the purpose for which she put in there, take this case out of the true meaning of the act. I do not think so. She went there for a harbor and to obtain supplies. We may conjecture that one reason which induced the legislature to put an end to these liens, on arrival in a foreign port was, to clear the vessel from all such incumbrances; the possible existence of which might prevent credit from being given to the vessel in a foreign port for necessary supplies. If so, the going in for supplies is exactly the case intended to be provided for, and I cannot say how great these supplies must be, to bring the case within the intention of the legislature. Their intent as manifested by their language, was to include all cases.

Nor do I think that putting in to a harbor, on account of a fog, takes the case out of the act. So far from making any such exception, the act, as we have seen, expressly says it is to include all cases of such arrival, whatever the inducement to it may have been. I do not think I have a right to make an exception which the act not only has not made, but has clearly negatived, and especially when dealing with this particular subject. Liens have sometimes been spoken of, as if they were so beneficial, that any disposition not to enlarge their operation must be a species of severity not consistent with that liberal policy which inspires the maritime law. I confess to grave doubts of the correctness of these views. The civilians, and especially the writers upon the modern laws of the continent of Europe, have had occasion to examine this subject with great care, and it is maxim among them, "Privilegia, cum sint stricti juris nec extendi possunt de re ad rem, nec de persona ad personam," or, as Boulay Paty (1 Cours de Droit Com. 36) states it, "privileged liens are matters of strict right, and it is not permissible to extend them from one case to another. In this matter one should never argue from analogies or consequences; the privilege must be given by the law itself."

Privileged liens, like that now in question, operating as a jus in re, and accompanying the thing into the hands of a bona fide purchaser for value without notice, as this claimant is, are an embarrassment to commerce; and though sufficient reasons exist for allowing them in particular cases, I consider the rule announced by Boulay Paty to be correct, that they are not to be extended by argument. See The Kearsage [Case No. 7,633].

The clause of the act now in question operates as a limitation of the lien. The libellant insists, that even if his case is within the language of the limitation, its peculiar circumstances render it proper for the court to declare, that it ought not to be considered as within the meaning of the legislature. But it is now a settled doctrine, which has been repeatedly announced and applied by the supreme court of the United States, that, however strong the reasons may be, the courts cannot ingraft on a statute of limitations an exception not made on it; nor declare a right not to be barred, if within the fair meaning of the language of the act of limitation, because it seems that the legislature would have excepted it if it had been anticipated and considered. Clementson v. Williams, 8 Cranch [12 U. S.] 72; McIver v. Ragan, 2 Wheat. [15 U. S.] 25; Bank of State of Alabama v. Dalton, 9 How. [50 U. S.] 522. I am by no means prepared to say this case would have been excepted, if foreseen. I think it is not excepted; and that the lien was terminated by the arrival at the foreign port.

The decree of the district court is reversed, and the libel dismissed with costs.